Mr. Marshall, would you kindly call the next case in the Court's docket, please? Yes, Your Honor. This case on the docket, 2-18-0236, Eric Bregman, individually in the withdrawing of Gene Bregman, a disabled person, M&G Truck Brokerage, Inc., and Texana Pickle Producer, Inc., defendants at the lease. Arguing on behalf of the plaintiff's account, Mr. Milo W. Lomita, arguing on behalf of defendants at the lease, M&G Truck Brokerage, Mr. James T. Chong, arguing on behalf of defendants at the lease, and Texana Pickle Producer, Mr. Milo T. Sanford. Thank you, counsel. You may proceed. Good morning, Your Honors. Milo Lundglai, on behalf of the plaintiffs. May it please the Court, Counsel. This case, as you know, arises from a collision between a truck and Gene Bregman's vehicle. The Bregmans, in addition to suing the truck company and owner or driver that struck Gene, we've also sued the Texana Pickle Producers, that's the company that grew the cucumbers that were being carried by Mr. Vila to the Claussen Pickle Factory in Woodstock, and also M&G Truck Brokerage, which is the company that brokered this trip. Could we start with count one? We're pretty familiar with the facts. Do you agree that this vicarious liability count turns on whether or not there was an agency relationship? Yes, it does. Yes. And why was there an agency relationship? We believe that the facts of this case are similar, virtually identical, to the facts in Sproul v. Robinson. And in that case involving a similar situation where a brokerage of a trip by a truck company, that the brokerage company had a certain amount of control. There's certain facts that certainly dovetail between the two cases, our case and that in Sproul. But there's one major difference, of course, and that is that in Sproul, the accident happened while the person was driving for the company. In our case, of course, it was 20 minutes or whatever it was after the load was delivered. I mean, is that determinative? No, it's not. I believe that when the trial court made its decision that it erroneously overlooked the realities of interstate trucking. When a truck company is hired to haul a load from south Texas to northern Illinois, it's not a one-way trip. That it's expected that that truck at some point is coming back to its origin, in this case Texas. But what does it have to do with control? I guess that's a critical issue to me. The general dispositive principle has been that an agency relationship created for the performance of a specific task terminates when the task is completed. And the principle no longer has a right to exercise any control over the agent. So the argument is very simple and very clear. Once the goods are delivered, what further control do they have over how the truck gets back to Texas, what route that takes, the time? Where is any remaining control over that driver and that truck? It's our position that if Mr. Vila was an agent of defendants at the time he left the loading dock in Progreso, that he remained an agent until the trip was completed. An agent for who? Well, he would have been... Let me just clarify that we are not contending that Mr. Vila was an agent of Texana. Texana did not exert any control over Mr. Vila. With regard to the agency and vicarious liability theories, that those are directed solely against M&G because it was M&G that exercised the control, had the rules that required Mr. Vila to call in, had the rules requiring... But that was before. I guess to ask the specific question again, how did M&G continue to instruct Vila after the completion of delivery and on the return leg? What did they instruct him to do and what control did they have over him on the return leg? You seem to say that the return leg is still covered by an agency relationship, but it can't exist in a vacuum. There has to be some control because there's not. Well, we believe that under the case law that's recognized and set forth in St. Paul Fire and Marine v. Frank Heart that a trip is not just the front part for the delivery, but the trip also includes the return. And once an agency relationship is created, we don't believe that it ends, that it continues for the whole trip. Therefore, there's vicarious liability for the entire trip if there, in fact, was an agency relationship. I think St. Paul, with all due respect, is distinguishable. Didn't it involve a principal common carrier and the agent-owner-driver entered into a one-year lease whereby the principal common carrier had ongoing exclusive possession, control, and responsibility over the insured tractor-trailer? This is a different... This is a broker, the trucking company, not a common carrier and an owner-driver, is it? Well, I respectfully disagree with your analysis in that I believe that in the Frank Heart case, Frank Heart... We're talking about St. Paul. Well, St. Paul v. Frank Heart. I think there's some distinguishing features there, with all due respect. I believe that in the St. Paul case that you had a company carrier that was assigning loads to their independent contractor driver, Frank Heart. And I believe that in this situation, it would be analogous to egg trucking and VILA being the assignee, getting the assignment for a job, and M&G being in the role of Wilson Freight, which was St. Paul's insured, making those assignments. Except the distinguishing feature here is, again, you're not directing it, is each delivery under EGG and M&G required its own contract. Upon completion of the delivery, as I understand it, EGG was free to accept a new assignment from M&G or any other broker. In St. Paul, you get a year contract, a year relationship. That's a little different than here. Well, I would point out that, as stated in the facts, Mr. Frank Heart, or Frank Heart Trucking, also had the right to accept loads from any other company. And, in fact, just prior to the accident, he was on his way to Peoria, and one of his reasons for going to Peoria was to try to obtain a load from some company other than the one that had sent him originally to Tulsa so that he could carry it back to Ohio, his home terminal, rather than deadheading all the way home. So I believe that under those circumstances, it's similar in that the truck driver in St. Paul likewise had the ability to accept a load from any other carrier to get back to Ohio. But when it couldn't, it was deadheading, and the accident happened, and the court ruled that it was still part of the initial trip, which was an assignment to go from Pennsylvania to Tulsa, Oklahoma. Let me ask you this. You said that you believe the agency relationship here continues. Yes. When would that agency relationship end? I believe the definition of the ending was set forth in St. Paul Fire Insurance, and it would be three different possibilities. One would be when the EGG truck got back to its home terminal, or two, when Mr. Vela returned to his home, or three, if Mr. Vela was able to obtain an assignment to haul another load of freight from anywhere on the route back to Texas, that once he got a new assignment, a new contract, if you will, then that would end any agency relationship that existed. What if Vela decided to go on a two-week vacation and leave his truck at the pickle factory? According to you, the contract would not have ended. He'd still be an agency. I mean, your argument seems to divorce the right of control from the agency consideration. How can that be? If the company has no control of M&G, or has no control over what he's doing to get back, he can go wherever he wants, get back whenever he wants, follows any rule, any route, where is the control? You said an arbitrary thing. It's when he gets back to the headquarters. Why would that be the completion? He doesn't have any further responsibilities for delivering anything to do with the contract, does he? Well, as I mentioned earlier, and that is that this is a two-way trip. It's not one way to Woodstock. It's contemplated. How is it a two-way trip? Well, it's contemplated that that truck is going to return. Mr. Vela was not moving to northern Illinois. At some point, after his delivery, it was his intention to go back to Texas, to his home base. But did M&G have any right to tell Vela how to get back there, when to get back there, what route to take? No, it did not. Well, then how is it a two-way trip? It's two-way because the expectation is that he is coming back. As was stated in the case of Hodges v. Johnson, it's from West Virginia, but it's saying that going to a destination and a return are both necessary parts of the same trip, that if you go to a destination to make a delivery, you also are going to be coming back, and that that would be part and parcel of the same trip, and it would end when the truck driver reaches his home base or his home. I'd like to move on to the other theory that plaintiff is proceeding against M&G. Now, does that take control at all? No, it does not, because M&G had an obligation to exercise reasonable care in choosing a truck company to carry the load of cucumbers from Texas to Woodstock, and control has nothing to do with it. Well, M&G argues in their blue brief that when the contract was over, they were no longer in control again, and that carries the day for them on this negligent hiring claim also. I believe that that proposition is incorrect, that the negligent act of M&G was in the decision they made to hire a trucking. Our expert, Whitney Morgan, testified that as a broker, you have an obligation to investigate the background of your truck companies that you hire to make sure that they are safe trucks, that they operate safely, that they're going to be able to deliver the goods without creating a hazard to any other person on the roadway. So you're saying the negligent hiring issue does not stand or fall on elements of control. Exactly, right, that the decision was made, the negligence occurred when M&G failed to adequately investigate the background of egg trucking. And as pointed out in the record, that if such an investigation had been done, they would have found through federal websites that EGG Trucking had at least four violations within 15 months prior to the accident of driving too many hours and falsifying time records. And our expert, Mr. Morgan, in his affidavit testifies that on this trip from Texas to Woodstock, Mr. Vila once again drove too many hours, he violated the hours of service regulations, and he falsified his time records, the very same thing that would have been shown had M&G done due diligence as it was required to do and investigate the background. Let's assume duty for a moment, and let's assume you have enough evidence on duty to get to a jury or to trial and enough evidence on breach to get to trial. The other side argues no proximate cause. Does the termination of a contract affect the element of proximate cause, whether that's legal or factual? I believe that is a factual issue of proximate cause for several reasons. Number one, we believe, and Mr. Morgan testified to it, that we believe that the fatigue of Mr. Vila was a factor in this accident. He testified that when he approached the intersection, he was confused and made a bad decision. He didn't react in time and stop in time. So we believe that fatigue was a factor. And it's our position and a question for the jury is when did that fatigue develop? Why did it develop? How was it that Mr. Vila was fatigued? And we believe the evidence shows that the fatigue came into being while Mr. Vila was driving for M&G, while he was en route to Woodstock. For example, I believe that the records based on the phone records show that Mr. Vila drove 18 hours to get to Woodstock by the appointed time. And prior to taking the wheel for 18 hours, he only spent five hours sleeping, which was a violation of time regulations. He needed to have at least 10. Once he got to Woodstock, he then, based on his hours of driving, had to be resting for 10 more hours before he could legally take the road. And he did not. He left the pickle factory after, at best, maybe getting five or six hours of rest, again based on the phone records. So we believe there's a question of fact that a jury could find that the fatigue, which contributed to causing this accident, resulted from the acts and conduct that occurred while Mr. Vila was driving the load of cucumbers for M&G. That's a factual question on negligent supervision by M&G. No. I mean, where does negligent hiring come into this? The negligent hiring is that the hours of service violations that were on the government's website should have disqualified the hiring of Ed Truckee and Mr. Vila. They should not have been retained for that load because they were unfit to do that. And one of the things that has to circle back and make the connection in this type of theory is that the alleged unfit character of the company has to be the contributing factor in the accident. And here we have that. We believe that disqualifying conduct of Ed Truckee was the fact that it had a history of driving beyond the hours of time, a history of falsifying its time records, and that that very same thing was done again and was a contributing factor in the accident. So it's our position that supervision has nothing to do with the negligent hiring, that the negligent act was done when M&G entered into a contract to have Ed Truckee haul the cucumbers to Pickle Factory. He was hired to deliver cucumbers to Clausen Pickle, right? He was. And so once that's done, the job is completed. So my question is how does this continue to be negligent hiring as opposed to, at best, negligent supervision? I mean, there was no supervision being done at any point on the trip for the negligent hiring. But your theory is negligent hiring. Right. And why does it continue to be a negligent hiring on the route back? Does that ‑‑ I will finish my question. Sure. Then I'll give you all the time you want. Sure. Does that hinge back to your same theory of why the agency continues? Well, in part, yes. But the other part is, Your Honor, is that under the negligent hiring scenario, the supervision, if any, is not relevant, that the negligent act occurred at the time M&G made the hiring. Right. And I'm with you if the accident had taken place someplace between Texas and the delivery. My question is when did the hiring end? Well, then it goes back to the fact that this is a round trip. Right. So that's your same theory as to why the agency relationship continues post‑delivery. Well, I believe it. Necessary? No. But there is a distinction. Okay. In that under the vicarious liability, as Justice Hudson pointed out, there was no control being exerted post‑delivery. Right. But in the negligent hiring, control is not relevant at all. Right. Here's really more the point of my question. When I hire you to do a job, negligently or otherwise, when you've completed the job, any harm by my negligent hiring is dissipated or it continues for some period of time? Again, I would go back to the fact that a trip, the hiring. So that's your theory is I hired you for both flights and the trip? Yes. You're hired for round trip. You're hired to go and come back because you're not just hired to go there. And there's an expectation that you will return so that the negligent hiring continues as long as the trip is still going on. Well, but the farther the trip goes away from the delivery, I mean, you lose much of the but‑for argument you have. You lose much of the foreseeability argument that you have. But I know here it wasn't. He hadn't gotten to 90 yet and he was 20 minutes or whatever after. But, I mean, would you agree that your agency argument that it goes all the way back to Texas, I mean, if this guy takes five weeks to get back to Texas, I mean, haven't you lost your but‑for and your foreseeability? Sure. And I agree. But it's a factual issue for the jury. For example, if Mr. Vila had gone into his sleeper and slept for eight or ten hours as he was required to do, then there would be no causation because he had at that point at least complied. Whereas he's going down the road, if he pulls over and sleeps for ten hours so he's no longer in violation of the regulations and also not fatigued, then there would not be proximate cause. But here, as you point out, we have a different scenario. It's that he was 15 minutes from leaving the pickle factory and we believe that the evidence shows that he was fatigued because he had very little sleep over 48 hours and that there was ‑‑ that the fatigue would have been a substantial factor and a but‑for in contributing to cause this accident. So I believe that the limitation would be under the typical rules of proximate cause. And that, however, is a jury question. All right. Thank you so much. Thank you. We've got time to move on. Thank you. Counsel for the accomplished. Mr. Sanders. Where are you, Mr. Barkley? My name is Michael Sanders and I represent Texas County. May I please report, counsel? Our contention today is that the trial was correctly in the summary judgment in favor of Texanna on count two, count three, and count eight. Now, count eight is the derivative loss of consortium count. Now, as you did below, the plaintiff has apparently conceded count three as it relates to Texanna by agreeing that there is no agency or vicarious liability. We're talking about counts three, four, and eight, correct? Yes, Your Honor. Okay. You said two, four. I apologize, Your Honor. And three isn't an issue, so we're talking about four. Count four. Yes, Your Honor. Now, I'm going to direct my remarks then to count four, although here the questions are very counterintuitive. With regard to count four, the trial court correctly found, I believe that the court, this court should affirm the injury summary judgment as to count four because there is nothing in this record that suggests that Texanna hired, selected, or retained EGG or VILA. When we moved for summary judgment, we presented admissible evidence from a considerable record that we did not have any role in selecting EGG to be the carrier or VILA to be the trial. That was brokered out. You had nothing to do with this. It was brokered out, Your Honor. So we had nothing to do with it, and there is nothing in this record to suggest otherwise. When we moved for summary judgment, we presented the evidence to show, and frankly plaintiff in his brief below and before this court presented evidence to show that it was M&G that brokered out the loan. Was there anything to this relationship between the one individual who was vice president at one company then moved to your company? No, Your Honor. He was no longer, it happened several years ago, he was no longer an owner of Texicana, and in fact that would have been M&G itself. It wasn't EGG, I'm sorry. The only evidence that plaintiff has presented either below or before this court, the citation in his reply brief, I think it's the last page on the last line, where he cited to page number 6129 to suggest that, well, M&G is denying that it hired EGG, and he cites again to 6129. Well, page number 6129 is M&G's motion for summary judgment, and it's just a statement in that motion for summary judgment by M&G, it's on 6129 and 6130 that says, well, we, M&G, did not hire EGG, we brokered the loan to EGG. I believe that is not a sufficient piece of evidence to avoid summary judgment. It's not evidence at all. It's simply a statement. The plaintiff also suggests that there may be a question of fact because in the past EGG had hauled our cucumbers, and it cites to a deposition of Mr. Gonzales. I believe the citation is to 9239. Well, in that deposition, Mr. Gonzales simply concedes that, yes, they had hauled our cucumbers before, but there is nothing in that deposition or in this record that in the past we had retained, hired, or selected, or had anything to do with selecting EGG. In the past, just like now, we brokered the loan. That's it. I'm sorry. It was M&G that brokered the loan to EGG. We've never had a contract with EGG. We've never paid EGG. In this particular instance, as plaintiff concedes, it's M&G that has brokered the loan, and as a result, since we never hired, we never selected, we never retained EGG or VILA, there is no issue of fact with regard to summary judgment, and the trial court properly entered summary judgment in favor of Texan. So unless Your Honors have any more questions regarding me on any other issue, I'll sit down and let the M&G. Thank you. Thank you. Thank you, Mr. Crowley. Thank you, Judge. Good morning, Your Honors. James Crowley for M&G. May it please the Court, counsel. It does sound like the Court has a number of questions on the M&G issue. I do have limited time. I just wanted to know if there's anything in particular you'd like to answer. I want to talk about the negligent hiring issue. Let me phrase it this way. Does the cause of action for negligent hiring automatically terminate when the agency relationship terminates? It seems to be the underlying tension there. You can make an argument it terminated upon the delivery of the goods, but does the cause of action for negligent hiring also automatically terminate upon the delivery of the goods? I would say, yes, it does, Judge. First of all, I don't think that we disagree that at the conclusion or at the point of delivery, this person was no longer an independent contractor or an agent. Because there was no further right to control at all? Correct. Okay. We understand that argument. With respect to the negligent hiring, assume that M&G failed to do the things that the plaintiff alleges in the brief. None of those matters were the proximate cause of this injury. This contract was performed without any injury to anyone. The produce got from point A to point B without injury, albeit there might have been some deviation from standard practices that were committed during that transport. None of those, however, were the result of Ms. Brutman's injury. There are cases, and unfortunately I didn't cite them, but there are issues where hospitals have been found not guilty in cases of doctors who worked long shifts and left the hospital and got into accidents. Similarly, cases with firefighters who worked long shifts and got into accidents afterwards, where their employers were not found liable for keeping them on longer than they should have been and making them fatigued on their way home. Now, do you have any case, though, that stands to the proposition I just cited, that the cause of action for negligent hiring automatically terminates when the agency relationship terminates? Because, you know, you can see some difficult human circumstances, cases where, in this case, let's say Mr. Wheeler had never slept at all, somehow makes it to the pickle factory, drops off the load, and as he's pulling out of the parking lot, he runs into somebody and kills somebody. There you would pick the position, doesn't matter. The pickles went off the truck, therefore, it doesn't matter how negligent they weren't hiring him, there's no cause of action. That would have to be your position, right? In answer to your question about do I have case law that says that if... It automatically terminates, right. Right. What I can say is that there is an absence of case law on that, that all the cases regarding negligent hiring as it pertains to freight brokers all pertain during the transportation of the produce or of the product. There is no case that has been cited where a freight broker has been found liable after the product has been delivered and the contract has been performed. As you can see, the but-for is sort of a compelling argument, the but-for argument that if they hadn't hired him to do this, you know, negligently, he wouldn't have been in a position to run into anyone. I understand what counsel is saying and I understand the argument, but it would have such a significant impact on tort law if that were to be the position or the law of the state that anybody who places somebody in a... is responsible for somebody being in a position at the time of a tort is somehow responsible for that action. I'm not saying it is or should be the law, but I'm wondering, you don't know of any cases off the top of your head that definitively have that statement. I don't, Judge. Okay. Well, I mean, the unfitness would have to contribute to the... be a contributory factor in the accident, though. I mean, not just anybody. I mean, you're brief. You talk about the person who was late getting a cup of coffee at the Starbucks, so then it puts them on the road 10 minutes late and they hit somebody. Well, that person has nothing to do with the negligent hiring here. There's nothing to show that those things dovetail at all. I mean, here you actually have allegations, at least, that they negligently hired this company. The company had a track record of safety violations regarding reporting hours. They're prepared, at least, they indicate, to present evidence that he was fatigued when he was driving. I mean, let me ask you this. Do you agree that there's a duty on your company to hire competent truck drivers? Yes, Judge. I mean, are you saying that that duty ends upon the delivery, or are you tying this? I know you're brief. You tied it to proximate cause. The trial judge tied it to duty. Are you saying the duty ends, or are we just talking about proximate cause? No, I would say that the duty ends at delivery because— There's no agency relationship, you're saying. Right, and that vicarious liability, there must be some legal relationship between the parties. I'm not talking about vicarious liability. I mean, we've established that there's a bunch of law out there that says you have to control somebody for vicarious liability. We're talking about negligent hiring. I mean, do the two overlap? Do you have any cases that say that the control issue, as Justice Hudson was talking about, somehow conflates with the negligent hiring elements? I don't have cases specifically, but what I would say is that when two parties enter into a contract, the parties know that there's a finite period for that contract to run, that if I retain an independent contractor, that there's some point when that contract is performed and I, as the person who hires you, no longer has a legal relationship with you. Again, yeah, but the legal relationship, so the negligent hiring terminates at the end of the task, just like an agency. Yes, Judge. Here's my high court to you. I hire the worst company that has the worst track record in the history of trucking, and they deliver the goods. On their way into there, they run over a kid, the guy falls asleep, runs over a kid on a bike, kills the kid. They've got a cause of action. They leave the yard, run over the same kid, no cause of action. I would agree with that. And that has nothing to do with foreseeability or but-for on the legal or factual proximate cause elements. And we don't, basically, that isn't even an element anymore because you're talking about the scope of the duty, and so we don't even get to proximate cause. I guess I'm not understanding exactly what you're saying. Well, I mean, I'm putting someone out on the road. I mean, if I hire that company, it's the worst company in the history of the universe. I put them out on the road because I hired them because they're the cheapest one or whatever, and I set that into action. If they hit somebody during the trip when they're fatigued, I'm on the hook for that, theoretically. I mean, at least it gets to a jury, perhaps. But if the minute that that contract ends, that person's still on the road because of me. I mean, they're not on the road for any other reason but me because I put them out there because otherwise they'd be in Texas still. And they run over a kid on a bike. I put that into action. I would disagree with that. Okay. So I haven't put that into action. I haven't set that into motion. You were responsible for what happened during the period of the performance of the act that you contracted for. Simply because the person somewhere after that contract is performed is not your doing if you hired that person. It seems that we're all disputing whether or not the return trip, well, the role that the return trip plays. Is it or is it not part of the deal here? You're speaking with respect to the hiring, the negligent hiring? Yes. Negligent hiring first and then the other causes. He was no longer under their control. Do you need control for negligent hiring? Yes, ma'am. You're welcome, Judge. Okay. Control. A minute ago you said that, I believe I understood, when the contract, in other words, I hired you to complete a contract. Once the contract is completed, the hiring is done. Therefore, as Justice Burke said, if a child is killed on the way out of the delivery, it may give rise to other causes of action but not negligent hiring. That's what I'm saying. That's your position? Yes, Judge. And is that because there's no longer control or because the terms of the hiring have been completed or have terminated? I would say both. Okay. Why would you need a cause of action for negligent hiring in the world then if control is an element? Because if control is an element of negligent hiring, as you indicated, or as you're arguing, then if I'm controlling that person, then they're my agent and I'm vicariously liable for their negligence. So there's no need for a negligent hiring. The reason for negligent hiring is because I hire someone, I don't control them at all, I set them under Mary Way, and I should have known that they've got some problem, and then that problem manifests itself. Correct. And here's where the two areas cross one another, Judge, because when I spoke about vicarious liability earlier with respect to the negligent hiring issue, with respect to a freight broker, unlike a motor carrier situation, the freight broker has an independent contractor relationship with the motor carrier driver. Before one can be considered, reach that principal-agent relationship that the cases talk about, SPURL, there has to be an addition of control, and that's what I'm speaking of. Before there has to be an addition of control for that person to go from independent contractor to agent, and that's what I'm saying with respect to negligent hiring in this case, is that there had to be an addition of control to make him into that agent that we're speaking of here. So your position is very simple. I mean, just to clarify, tell me if I'm perceiving it correctly. Any liability in the parts of M&G terminated upon the conclusion of the agency relationship, whether it's negligent hiring or whether it's vicarious liability, correct? That's your position. It may seem harsh, but is that your position? Well, I would say conclusion of the contract, performance of the contract. Performance of the contract. Yes. But the tickles were delivered. He was done with his assignment. Yes, John. Okay. Even if it was foreseeable that there would be some further action after that by the person? That's only one element of negligence. A duty is foreseeability. The other is the ability to do something about it. And M&G no longer had an ability to do anything about that foreseeability once he was no longer in the control? I don't mean to quibble, but negligent hiring is on the front end, and they've already sent it into motion. I mean, yeah, they couldn't do anything about it after he's out on his own, but, you know, again, that's the issue with negligent hiring is it happens at the beginning, and they can't do anything about it, but they should have been aware of it. Thank you, John. Thank you, Mr. Cohen. If you want that, you have five minutes on your phone. I'd like to pick up at the point you were making, Justice Burke, and that is under the negligent hiring, this is a separate negligence claim, and as we pointed out in our brief, the usual test for duty applies, and that's a four-part test. One is foreseeability, and I believe that it's reasonably foreseeable that somebody who makes a trip to northern Illinois is going to come back to Texas, so it's foreseeable that that person is going to come back, and that would be part of the duty. The second would be the magnitude of the risk. If you have a huge semi-truck, it's a risk on the road, a risk of causing serious injury or death if it's negligently operated, so I believe those two factors are met. The next one is burden to put on the defendant. All the defendant had to do in this case to meet their burden was to go to the website established by the federal government that has a record of all truck companies, and they would have found the driving record of EGG trucking, the fact that it had these four violations relating to hours of service, falsified time records, that's not a big burden at all. The M&G manager, I believe her name is Ms. Valerica, said that she was aware of this website, they had used this website, and in fact on some occasions had disqualified truckers based on information they found on the website, so this would not have been an onerous burden. The second, the consequence of placing the burden on the defendant, again I believe is in favor of finding duty because the consequence is merely requiring a broker to do due diligence to determine and screen, vet their companies to make sure that they're safe, and also under the way the law has developed on negligent hiring, is that there is a safeguard. I mean this is not an open-ended duty, that the duty and responsibility is limited to the unfitness that should have been known, and that same unfitness has to be a contributing factor to the accident, which we have here. Let me ask you the reverse of what I asked the counsel on the other side. Do you have any cases that say that the cause of action for negligent hiring can survive the termination of the agency relationship? Because that's what he's arguing, the agency relationship terminates, therefore outgoes the cause of action for negligent hiring as well. The case that again I would cite would be the St. Paul Fire and Marine. Not directly answering his question. Exactly, right. However, I'd also point out that I believe the analysis of the Illinois Supreme Court in the Kearney v. Union Pacific case I think is instructive. In that case there were also two claims brought by plaintiff. One was under Section 414, control issues. The other was negligent hiring. And they found there was inadequate control for 414, but that did not automatically cancel out the negligent hiring aspect of the case. It was ultimately resolved in favor of the defendant, but it was for the reason that the injured party was actually, I believe, employed by the company that was unfit. And he said that the cause of action wouldn't apply. But I just wanted to point out to the issue you brought up, and that is that there is a distinction between the two, that the lack of control does not automatically nullify a claim brought for negligent hiring. You would agree there is some appeal to the idea that if I even negligently hire someone to do a job, and then once that job is done, why would I still have any liability in the future? Once I set it into motion, what I contracted for is over, and I'm through with it. Right. But I think it goes back to foreseeability, which is the cornerstone of duty. And I believe that it's reasonably foreseeable that if someone hires somebody, brokers a truckload, and sends them to Illinois, that the expectation is and the foreseeable event is that that truck is going to leave and come back to Texas and that they would have a duty arising from whatever happens on that return trip as well. Why isn't it just as foreseeable that the driver would then rest as he's required to do? Well, I don't think that that would go to the duty part. I believe that would go to the proximate cause. I mean, if the driver, I mean, and in this circumstance, I believe. But my point is that you keep relying on it was foreseeable that he was going to drive straight back to Texas and not rest and continue to drive fatigue. Why is it not just as foreseeable that he stops? Sure. I believe that foreseeability is linked to the past record of the company. They had a past history of ignoring hours of service. They had a past history of falsifying their time record. And that's your hope, is the past history. And to that, yes, it would be foreseeable that the company is going to act in the same way and not abide by the proper rules. But that has to go to legal foreseeability for proximate cause, which is generally a factual issue. Exactly. The foreseeability you were talking about before has to do with it's foreseeable when I hire a trucking company that when the job load is delivered, it's at least foreseeable as a matter of law, which general duty is a matter of law. It's foreseeable that the person is going to leave the yard at some point in time and drive away. Exactly. Yes. Yes. Thank you, Mr. Longworth. Thank you. All right. I'd like to thank both counsel for calling the arguments here this morning. The matter will, of course, be taken under advisement in a written decision. We'll issue in due course. We will stand in recess to prepare for the next case. Thank you.